[Civ. No. 15884.   First Dist., Div. One.   May 10, 1954.]

ROSALIE H. HALL, Appellant, v. KATHRYN BURNS, Respondent.

Joseph A. Brown and Miguel A. Leite for Appellant.

Wagstaffe & Daba and Carlos R. Hulse for Respondent.

WOOD (Fred B.), J.—Plaintiff Hall sued San Mateo County Title Company, a corporation, as sole defendant alleging that the defendant had received $2,853.04 for the use and benefit of plaintiff. Thereafter the title company paid the sum of $5,706.08 into court and Kathryn Burns was substituted as sole defendant. She denied that the title company had received moneys for the use and benefit of

plaintiff and, cross-complaining, alleged that the title company had received $5,706.08 for her use and benefit and has deposited said sum in court and that she, Burns, is the owner and entitled to the immediate possession of said money and that plaintiff, without right, claims an interest in one-half thereof. Plaintiff denied these allegations except that she admitted claiming an interest in one-half of the money, alleging ownership in herself of said one-half.

The court found the allegations of the cross-complaint true and that (1) the sum of $5,706.08 is the balance due on a note secured by deed of trust dated August 12, 1942, payable to defendant Burns; (2) September 8, 1942, the note was endorsed by Burns to Wells Fargo Bank and Union Trust Company as trustee in a certain trust created by plaintiff and defendant in 1931; (3) at the time of said deposit, and at all times thereafter, the trust provided that principal and income thereof could be withdrawn by defendant alone and not by plaintiff and defendant and that defendant could alone modify and amend the trust; (4) thereafter defendant instructed the trustee to, and the trustee did, endorse the note to plaintiff and defendant as joint tenants and to deliver the note to the San Francisco Bank for collection; (5) this endorsement and delivery were for purposes of convenience only and the intents of plaintiff and defendant were that the note remain subject to the terms of the trust; (6) thereafter defendant demanded all of the proceeds of the note and under the terms of the trust is entitled to the whole thereof, both principal and accumulated income in the sum of $5,706.08; (7) by order of court, entered July 30, 1951, $2,603.04 had been paid to defendant; and concluded that defendant is entitled to the sum so paid and to the sum of $3,103.04, the balance remaining on deposit in court.

*Plaintiff claims, in effect, that these findings are not supported by the evidence and that the legal conclusions are erroneous.* Our examination of the record convinces us that the evidence is sufficient and that the legal conclusions drawn from the findings are correct. A summary of the supporting evidence follows.

Defendant and plaintiff are mother and daughter. In 1931, they created a trust by written agreement between them as trustors and Wells Fargo Bank and Union Trust Company as trustee. The corpus consisted of various securities which until then belonged to the defendant as her sole property. The trustee was to accumulate the income, adding

it to the principal, until the death of the survivor of defendant and plaintiff subject to the right of each to withdraw any or all portions thereof. The trust could be terminated by their joint action only.

In September, 1935, with moneys withdrawn by her from this trust estate, defendant purchased a house and lot in Atherton, taking a deed in the name of plaintiff as grantee. Defendant testified that she put the property in plaintiff's name because they were living together and to avoid will or probate, without telling plaintiff at the time and not intending it as a gift; that plaintiff did not want to stay here and when she was leaving in November of that year executed a deed putting the property in the names of defendant and plaintiff as joint tenants;* that defendant lived on this property for a number of years, paid the taxes and improved it, including the erection of a guest house, in 1938, which she rented for $40 a month; that plaintiff never sent defendant any money for repair of this property or for any other purpose.

In December, 1935, plaintiff and defendant, by agreement in writing with the trustee, amended the 1931 trust agreement to the effect that the trustee would continue to accumulate the income, adding it to the principal until the death of the survivor of plaintiff and defendant, subject to a right in the defendant during her lifetime to withdraw any or all portions of the principal and accumulations and to modify, alter or terminate the trust agreement in whole or in part.

In August, 1942, defendant sold the Atherton property, delivering a deed executed by plaintiff and defendant and receiving payment in the form of $2,000 in cash and a promissory note for $8,500 in favor of defendant as sole payee, secured by a deed of trust in her favor as sole beneficiary. She put the $2,000 into the trust fund; advised plaintiff she had taken the note in her own name; and then assigned the note to the Wells Fargo Bank as trustee and put it into the trust. In September, 1942, defendant and the trustee amended the trust agreement, reciting that defendant had transferred to the trustee the $8,500 note and deed of trust which would be held by the trustee subject to the trust agreement of 1931 as amended, the trustee to receive a reasonable fee for services in connection with the collection and administration of the trust with respect to the note and deed of trust. The parties

---

*Plaintiff went to New York and has lived there ever since.

stipulated that defendant assigned the deed of trust to the Wells Fargo Bank, putting it into the trust fund.

The installment payments on the $8,500 note were made to the Wells Fargo Bank. Defendant testified they were put into her commercial account for her to draw on; that she has been making withdrawals from this fund from time to time, having no other money to live on.

In January, 1945, the Wells Fargo Bank endorsed the note* as follows: "Pay to the order of Kathryn Burns, a widow, and Rosalie Henningsen Hall, a married woman, as joint tenants, with right of survivorship, without recourse, endorsed by Wells Fargo Bank and Union Trust Company as trustee, subject to the terms and provisions of that certain trust agreement made in and executed on the 11th day of April, 1931, by and between Kathryn Burns and Rosalie Henningsen as trustees, and said Wells Fargo Bank and Union Trust Company as trustee." In March of that year, the Wells Fargo Bank, on behalf of the defendant, mailed the note to the San Francisco Bank for the account of the defendant individually.

Defendant testified that the Wells Fargo Bank was charging a certain sum per year to collect on the note and she was informed that the San Francisco Bank would charge less. For that reason she told the Wells Fargo Bank to send the note to the San Francisco Bank; it was for collection, that was all; the San Francisco Bank did collect and she lived on that money; in October, 1947, she told plaintiff about that assignment of the deed of trust from the Wells Fargo to the San Francisco Bank.

Defendant testified that when she received word from the title company that the note was going to be paid off in full, she had the San Francisco Bank deliver the note and deed of trust from the collection account and directed the title company to put the proceeds into the Wells Fargo trust account; it was and is her desire to have that money go back into the trust; that money is to go into the trust. Asked if she ever considered the moneys represented by the note and deed of trust as being out of the trust by the assignment for collection to the San Francisco Bank, she said "Oh, I never wanted to break the trust, no."

February 8, 1949, defendant gave the title company instructions (1) for delivery of reconveyance of trust deed and release

---

*At the time of the January, 1945, endorsement by Wells Fargo Bank the balance due on the note was $6,513.55.

of chattel mortgage (2) upon collecting for account of Kathryn Burns and Rosalie Henningsen Hall $5,075.81 plus interest in the sum of $630.27 and for account of Attorney O'Malley $252 and then (3) to disburse (a) $5,075.81 to Wells Fargo Bank and Union Trust Company for trust account of Kathryn Burns and Rosalie Henningsen Hall, (b) $630.27 to Kathryn Burns and Rosalie Henningsen Hall, and (c) $252 to O'Malley.

Asked if she was going to send any of the $630.27 to plaintiff, defendant said ''No, that was all to go into the trust. . . .''

March 4, 1949, defendant's instructions to the title company showed receipt by the title company from Kathryn Burns of a $630.27 check payable to Burns and Hall and a $5,075.81 check payable to Wells Fargo Bank and Union Trust Company for Burns and Hall, which checks defendant instructed the title company to cancel and then to issue a new check to Wells Fargo Bank and Union Trust Company for the trust account of Burns and Hall in the sum of $5,706.08.

Such a check was issued to the Wells Fargo Bank for the trust account of Burns and Hall. That check was subsequently returned to the title company by defendant, whereupon a new check was issued to Burns and Hall directly. The latter check was never cashed. It was reissued from time to time at six-month intervals because of a rule of the bank that a check is good for only six months.

Then this action was filed and the money was paid into court. The parties stipulated that the $5,706 on deposit is the balance of the proceeds of the sale of the Atherton property.

The inference is reasonable that the $8,500 note, at the time of its payment, was a part of the 1931 trust estate; that the proceeds of the note were a part of that estate when defendant's instructions were given the title company on February 8 and March 4 of 1949, and thereafter.

March 24, 1949, defendant revoked the trust. From December, 1935, until revocation, defendant had the right to make unlimited demands upon the principal and income of the trust and also to revoke it. Her unlimited power of withdrawal entitles her, upon revocation, to claim all of the assets of the trust, including the moneys paid into court in this action.

*Plaintiff also claims error in the denial of her motion to amend the complaint.* We find in that denial no abuse of discretion, no basis for reversal.

In the complaint which was filed September 20, 1950, and

in the answer to the cross-complaint, filed July 5, 1951, plaintiff claimed but one-half of the money received by the title company and paid into court. In June, 1951, defendant moved for release to her of a portion of the money on deposit, upon the ground that there was no issue as to one-half of the total sum on deposit. Thereupon, pursuant to stipulation of the parties and order of court, the sum of $2,603.04 was paid to the defendant.

A year later and on the first day of the trial, plaintiff requested permission to amend the complaint to claim ownership of the entire deposit in court ($5,706.08) upon the theory that she was entitled to one-half of the proceeds of the sale of the Atherton property.

Defendant objected because of the time that had elapsed and the change of circumstances thereby involved; plaintiff's release of the $2,603.04 without claim thereto; lack of notice of motion or of any written proposed amendments to the pleadings, asserting that any amendment of the kind proposed would completely alter the issues in the case, issues that would involve transactions which occurred as early as 1942 and possibly 1931, and would in turn involve questions of the running of the statute of limitations.

The court denied the motion without prejudice to any independent action which plaintiff might institute, if she has a right of action. In so doing, the court observed that the present action was commenced for recovery of a portion of the money then on deposit with the title company; that there might be some right of action for an accounting between the parties now before the court; that the case should proceed to determine the rights to the money on deposit under the issues as framed by the pleadings, but without prejudice to any such other action as the plaintiff may have, the intention being that this will preclude the defendant setting up res judicata in this case as to the next suit.

We find in this no basis for holding that the trial court committed an abuse of discretion in denying the motion.

The judgment appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied June 9, 1954, and appellant's petition for a hearing by the Supreme Court was denied July 7, 1954.